UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-23778-CIV-ALTONAGA

**JEAN GEROME**,

    Petitioner,
v.

**FLORIDA DEPARTMENT
OF CORRECTIONS**,

    Respondent.
_____/

## ORDER

**THIS CAUSE** came before the Court on Petitioner, Jean Gerome's Petition Under 28 U.S.C. [Section] 2254 for Writ of Habeas Corpus by a Person in State Custody [ECF No. 1] and Memorandum of Law [ECF No. 1-1], both filed on September 27, 2023.[1] Petitioner challenges the constitutionality of his criminal judgment imposed by the Eleventh Judicial Circuit Court in and for Miami-Dade County, Florida, in case number F15-16272, for sexual battery without causing serious injury.  (*See generally* Pet.).

Respondent filed a Response [ECF No. 15], an Index to Appendix [ECF No. 16], and a Notice of Filing Transcripts [ECF No. 17].  Petitioner filed a Reply [ECF No. 20].  The Court has carefully considered the parties' written submissions, the record, and applicable law.  For the following reasons, the Petition is dismissed as time-barred.

### I.  BACKGROUND

On November 17, 2016, the State of Florida charged Petitioner by Information with one

---

[1] "Under the 'prison mailbox rule,' a *pro se* prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing." *Williams v. McNeil*, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009) (citations omitted).

count of sexual battery without causing serious personal injury. (*See* App., Ex. 1, First Composite [ECF No. 16-1] 25–28).[2] The State alleged that Petitioner "penetrat[ed] E.W.C.'s (an adult) anus and/or vagina with his finger and/or penis, without the consent of said victim[.]" (*Id.* 27 (alterations added; emphasis omitted)). E.W.C. had arrived at the site of the sexual battery around 8:00 p.m., and the battery occurred sometime after. (*See* Notice, Ex. 5, Trial Tr. Vol. 5 [ECF No. 17-5] 456:5–57:9). E.W.C. identified Petitioner as her assaulter with "a hundred percent" certainty both when law enforcement presented her with a photo array and in court. (*See* Notice, Ex. 3, Trial Tr. Vol. 3 [ECF No. 17-3] 254:5–55:5, 247:24–48:8). Another witness also testified that Petitioner was present at the scene. (*See* Notice, Ex. 4, Trial Tr. Vol. 4 [ECF No. 17-4] 364:14–365:6, 374:18–375:15).

On August 3, 2017, a jury found Petitioner guilty as charged. (*See* First Composite 106). Defense counsel moved for a new trial 11 days later, arguing that "[t]he alleged victim's testimony was not credible and was full of inconsistencies." (*Id.* 108 (alteration added)). The state trial court orally denied the motion for new trial at Petitioner's sentencing hearing on October 4, 2017. (*See* Notice, Ex. B, Sent'g Tr. [ECF No. 17-7] 4:24–5:2). The state trial court adjudicated Petitioner guilty of the offense and sentenced him to 94.5 months in prison followed by three years of sex offender probation. (*See* App., Ex. 2, Second Composite [ECF No. 16-2] 5).

Petitioner appealed his conviction and sentence to Florida's Third District Court of Appeal. (*See id.* 16). At first, Petitioner's appellate counsel filed an initial brief arguing that the state trial court "erred in overruling [Petitioner's] objection to the State's peremptory challenge on Juror 28 [], an employed, 19-year old African-American male." (*Id.* 33 (alteration added)). But appellate

---

[2] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings. Citations to deposition testimony and trial transcript rely on the pagination and line numbering in the original document.

counsel then filed a memorandum brief and motion to withdraw as counsel under *Anders v. California*, 386 U.S. 738, 744 (1967), conceding there was "no reversible error which could be argued in good faith as a predicate for relief." (Sec. Comp. 94–98). The Third DCA granted Petitioner's motion to withdraw and provided Petitioner an opportunity to file a *pro se* initial brief. (*See id.* 101–02).

Petitioner filed his *pro se* brief, arguing that the trial court erred "by failing to give a read-back instruction to the jury for deliberation" and "by failing to grant his motion for judgment of acquittal based on insufficient evidence to support the charge [sic] offense." (*Id.* 111). The Third DCA affirmed Petitioner's conviction on May 1, 2019. *See Gerome v. State*, 274 So. 3d 1090 (Fla. 3d DCA 2019).

On May 19, 2020, Petitioner filed a petition for writ of habeas corpus alleging ineffective assistance of counsel in the Third DCA. (*See* App., Third Composite [ECF No. 16-3] 2–12). Petitioner claimed that appellate counsel performed ineffectively by filing an *Anders* brief because she could have argued on direct appeal "that it was *per se* prejudicial error to grant a mid-trial motion to amend an information where doing so had the effect of changing the manner in which an essential element is proven at trial." (*Id.* 8).[3] The Third DCA denied the habeas petition on July 1, 2020, holding that appellate counsel's failure to raise this issue on appeal did not constitute deficient performance because "there was insufficient authority to support the position the amendment was improperly condoned." *Gerome v. State*, 306 So. 3d 314, 317 (Fla. 3d DCA 2020). The Third DCA's mandate issued on July 29, 2020. (*See* Third Comp. 46).

---

[3] According to Petitioner, the State's Information originally alleged that he had "committed the sexual battery charged in this case by penetrating the complaining witness' [sic] anus with a finger or penis[,]" but the trial court then improperly granted the prosecutor's mid-trial motion "to amend the information to allege penetration of the complaining witness' [sic] anus or vagina with a finger or penis." (*Id.* 4 (alterations added)).

On May 28, 2020, while the habeas corpus petition was pending before the Third DCA, Petitioner filed a Motion for Postconviction Relief under Rule 3.850 of the Florida Rules of Criminal Procedure. (*See id.* 48–58). Petitioner argued that his trial counsel was ineffective for failing "to properly move for a judgment of acquittal[.]" (*Id.* 52 (alteration added)). The trial court denied the Rule 3.850 Motion on September 2, 2020 (*see id.* 79–81), and the appellate court dismissed the appeal as untimely on December 3, 2020, *see Gerome v. State*, 348 So. 3d 586 (Fla. 3d DCA 2020).

Petitioner filed a successive Rule 3.850 motion on February 22, 2023. (*See* App., Ex. 5, Fifth Composite [ECF No. 16-5] 8–52). In addition to alleging that the prosecutors engaged in misconduct and committed *Brady*[4] violations, Petitioner presented an affidavit of Shedline Gerome (Petitioner's sister) as "newly discovered evidence" that he claimed proved his innocence. (*See id.* 13–20). In this affidavit, Shedline makes three claims: (1) Petitioner was at her home the night of the charged conduct; (2) Petitioner's cousin, Mathieu Alexandre, admitted to Shedline that "he set [Petitioner] up on a frivolous rape charge" because he and Petitioner had "an ongoing feud"; and (3) Alexandre threatened to "beat [Shedline] with a machete" if she told anyone about his admission. (Mem. 43–44 (alterations added)). Shedline admits, however, that Petitioner was not with her for two stretches of time between 9:00 p.m. and 12:00 a.m. (*See id.* 43).

The trial court denied Petitioner's successive Rule 3.850 motion on October 18, 2023 because (1) Defendant must have known Shedline's putative testimony at the time of trial, so it could not be "newly discovered evidence"; and (2) all remaining claims were untimely. (*Id.* 119–23). Petitioner appealed the denial of this motion, but the Third DCA once again affirmed his conviction. *See Gerome v. State*, No. 3D23-2223, 2024 WL 1084389, at *1 (Fla. 3d DCA Mar.

---

[4] *See Brady v. Maryland*, 373 U.S. 83 (1963).

4

13, 2024).

Petitioner then filed a successive petition for writ of habeas corpus with the Third DCA on April 13, 2023. (*See* Third Comp. 99–126). The Third DCA denied the successive habeas petition on July 12, 2023, because "[e]ach of the six counts in [the] petition should have been raised either in his motion for post-conviction relief or on direct appeal." *Gerome v. State*, 368 So. 3d 38, 42 (Fla. 3d DCA 2023) (alterations added). The Third DCA's mandate issued on September 15, 2023. (*See* Fifth Comp. 6).

Petitioner initiated the present proceeding on September 27, 2023. (*See* Pet. 24).

## II. LEGAL STANDARDS

Federal review of state habeas petitions is governed by the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"). *See Brumfield v. Cain*, 576 U.S. 305, 311 (2015). Section 2254 provides that federal habeas relief for a person in state custody is available only if the state court decision was "contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States," or "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* (quotation marks omitted; quoting 28 U.S.C. §§ 2254(d)(1)–(2)).

The AEDPA imposes "[a] 1–year period of limitation . . . [for] an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2244(d)(1) (alterations added). The limitations period runs from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by

> the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

*Id.* The limitations period is tolled for "[t]he time during which a properly filed application for State post-conviction or other collateral review" is pending. *Id.* § 2244(d)(2) (alteration added).

### III. DISCUSSION

**A. Timeliness**

Respondent argues the Petition is untimely, going so far as to say Petitioner concedes this point. (*See* Resp. 11). The Court disagrees Petitioner concedes this, although it ultimately agrees with Respondent.

Petitioner never argues the Petition was filed within one year of his judgment becoming final. (*See generally* Pet.). Still, he relies on two alternative methods of establishing timeliness. First, Petitioner contends that he has "newly discovered evidence of innocence" and that "the time limitation should be excused to avoid a miscarriage of justice." (Pet. 22). Second, Petitioner asks the Court to apply the limitations period of section 2244(d)(1)(D) since he is relying on "a sworn statement from the witness, Shedline Gerome dated March 2, 2023[.]" (Reply 5 (alteration added)). After considering the record, the Court agrees with Respondent that the Petition is untimely under all applicable limitations periods.[5]

1. Section 2244(d)(1)(A)

A criminal judgment becomes final "when [the Supreme Court] affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a

---

[5] Petitioner does not assert that an unconstitutional State-created impediment to filing his Petition existed, nor does he raise a constitutional right newly recognized by the Supreme Court. (*See generally* Pet.; Reply); *see also* 28 U.S.C. §§ 2244(d)(1)(B)–(C).

certiorari petition expires." *Clay v. United States*, 537 U.S. 522, 527 (2003) (alteration added; collecting cases). Where, as here, one of Florida's district courts of appeal affirms a criminal conviction in an unelaborated opinion, the judgment becomes final 90 days after the entry of judgment. *See Chavers v. Sec'y, Fla. Dep't of Corr.*, 468 F.3d 1273, 1275–76 (11th Cir. 2006); *see also Williams v. Dixon*, No. 23-cv-14387, 2024 WL 147788, at *5 (S.D. Fla. Jan. 12, 2024) ("Stated plainly, for petitioners who do not (or cannot) seek discretionary review from the Florida Supreme Court, their judgment becomes final ninety days after the District Court of Appeal enters a judgment affirming the conviction and sentence unless the petitioner files a petition for writ of certiorari with the Supreme Court of the United States." (citation omitted)).

The Third DCA affirmed Petitioner's conviction on May 1, 2019. *See Gerome*, 274 So. 3d at 1090. Since Petitioner did not seek certiorari review from the Supreme Court, his judgment became final 90 days later on July 30, 2019. *See Chavers*, 468 F.3d at 1275. The limitations period began to run the next day and "continue[d] to run until [Petitioner] file[d] a state motion for post-conviction relief." *San Martin v. McNeil*, 633 F.3d 1257, 1266 (11th Cir. 2011) (alterations added).

Two hundred ninety-three (293) untolled days later, Petitioner filed his first habeas petition with the Third DCA on May 19, 2020. (*See* Third Comp. 12). Petitioner then filed his first Rule 3.850 motion on May 28, 2020. (*See* Fifth Comp. 59). So long as one of these two post-conviction applications remained pending, Petitioner's AEDPA limitations period was tolled. *See San Martin*, 633 F.3d at 1266 ("Once the petitioner files a motion for post-conviction relief in state court, the AEDPA clock stops." (citing 28 U.S.C. § 2244(d)(2))).

The Third DCA denied the habeas petition and issued its mandate on July 29, 2020. (*See* Third Comp. 46). The trial court then denied Petitioner's Rule 3.850 motion on September 2,

2020. (*See id.* 81). Thirty days later, on October 2, 2020, Petitioner's window to appeal the denial expired, and the Rule 3.850 motion was no longer "properly filed" before the state court. *See Castillo v. Dixon*, No. 20-60797-Civ, 2022 WL 2651623, at *4 (S.D. Fla. July 8, 2022) (citing *Williams v. Crist*, 230 F. App'x 861, 864 (11th Cir. 2006)).[6] Thus, on that day, the limitations period began to run again. *See id.*

At that point, Petitioner still had 72 days left after October 2, 2020, to file his habeas petition or another tolling motion under section 2244(d)(2). Petitioner did not attempt to do either until he filed another state post-conviction motion on February 22, 2023. (*See* Fifth Comp. 8). By that time, another 873 untolled days had passed since the limitations period resumed on October 2, 2020. Neither the successive February 22, 2023 Rule 3.850 motion nor the successive April 13, 2023 state-court habeas petition could "reset or restart the limitations period" since it had expired long before they were filed. *Moore v. Crosby*, 321 F.3d 1377, 1381 (11th Cir. 2003). Because more than one year of untolled time passed between Movant's judgment becoming final on July 30, 2019 and the instant Petition being filed on September 27, 2023, the Petition is untimely under section 2244(d)(1)(A).

2. Section 2244(d)(1)(D)

Next, Petitioner contends that his limitations period should be measured under section 2244(d)(1)(D), in accordance with the date he discovered Shedline Gerome's March 2, 2023 affidavit. (*See* Reply 5). "Section 2244(d)(1)(D) runs the [AEDPA] clock from 'the date on which the factual predicate of the claim *could have been discovered* through the exercise of due diligence.'" *McQuiggin v. Perkins*, 569 U.S. 383, 394 (2013) (alteration adopted; other alteration added; emphasis added) (quoting 28 U.S.C. § 2244(d)(1)(D)). The limitations period begins to

---

[6] Although Petitioner attempted to appeal the denial of his Rule 3.850 motion, the Third DCA dismissed his appeal as untimely on December 3, 2020. *See Gerome*, 348 So. 3d at 586.

run "'when the prisoner knows (or through diligence could discover) the important facts, not when the prisoner recognizes their legal significance'" and, most importantly, "'not when it was actually discovered.'" *Cole v. Warden, Ga. State Prison*, 768 F.3d 1150, 1157 (11th Cir. 2014) (emphases omitted; first quoting *Owens v. Boyd*, 235 F.3d 356, 359 (7th Cir. 2000); and then quoting *Schlueter v. Varner*, 384 F.3d 69, 74 (3d Cir. 2004)).

Whether a habeas petitioner exercised "due diligence" in discovering new facts "must be determined on a case-by-case basis relative to the factual predicate." *Id.* at 1156. Although a petitioner is not required to "'undertake repeated exercises in futility or to exhaust every imaginable option,'" evidence that could have been discovered earlier through a "reasonable investigation" will not trigger section 2244(d)(1)(D)'s limitations period. *Frederick v. Sec'y, Dep't of Corr.*, 481 F. App'x 472, 474 (11th Cir. 2012) (quoting *Aron v. United States*, 291 F.3d 708, 712 (11th Cir. 2002)); *see also Sutton v. Dixon*, No. 20-23156-Civ, 2023 WL 8698343, at *5 (S.D. Fla. Dec. 15, 2023) (explaining that a habeas petitioner does not exercise due diligence if an earlier "reasonable investigation" could have discovered the same facts).

Section 2244(d)(1)(D) does not apply since Petitioner could have discovered Shedline Gerome's exculpatory testimony much earlier than March 2, 2023, through the exercise of due diligence. Shedline's affidavit purportedly establishes both an alibi for Petitioner and suggests Alexandre had a motive to "set up" Petitioner. (Mem. 43–44).

Yet, Petitioner obviously would have known about his own alibi and that he was feuding with Alexandre before his trial took place — and certainly before Shedline executed her affidavit on March 2, 2023. *See, e.g., Frederick*, 481 F. App'x at 474 (noting that "there is no merit to petitioner's claim that the substance of [] alleged false testimony is newly discovered evidence" because "petitioner was in the best position to know whether a potentially fabricated conversation

9

between himself and his wife did or did not take place" (alteration added)); *Barringer v. Sec'y, Dep't of Corr.*, No. 15-cv-2458, 2016 WL 3667936, at *2 (M.D. Fla. July 11, 2016) (refusing to apply section 2244(d)(1)(D)'s limitations period since the petitioner "knew the possibility of an alibi defense" before the affidavit was submitted).[7] Shedline's claim that she was afraid to testify because Alexandre threatened her does not affect the Court's calculus since Petitioner still knew (or should have known) that she *could have* provided this exculpatory testimony before trial. *See McQuiggin*, 569 U.S. at 394. Consequently, section 2244(d)(1)(D) does not apply.

3. Actual Innocence

"If a defendant files a petition for a federal writ of a habeas corpus beyond [section 2244(d)(1)'s] one-year limitation period," the court can still review the otherwise untimely petition if one of two equitable exceptions are met: "equitable tolling" or "actual innocence." *San Martin*, 633 F.3d at 1267–68 (alteration added). Petitioner contends his position is reviewable under the "actual innocence" exception, arguing that Shedline's affidavit proves his innocence since "there w[ere] no eyewitnesses that place[d] Petitioner at the crime scene[.]" (Pet. 5 (alterations added); *see also* Mem. 4–7; Reply 7–8).[8] Respondent, and the Court, disagree. The Court explains.

A petitioner satisfies the "actual innocence" exception if (1) he presents "'new reliable evidence'" that was not shown at trial; and (2) "'[] it is more likely than not that no reasonable

---

[7] It bears noting that the state trial court also found that Petitioner could have discovered the substance of Shedline's affidavit much earlier. (*See* Fifth Comp. 122 ("In her affidavit, Ms. Gerome states that she was with the Defendant at the time the rape occurred. If that is the case, this alibi defense must have been known by the Defendant at the time of trial.")). The Court cannot second-guess the trial court's factual determination unless Petitioner rebuts "the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Petitioner fails to provide any evidence on this point, so the Court must defer to the state court's findings on this issue. (*See generally* Pet.; Mem.; Reply).

[8] Petitioner does not allege he is entitled to equitable tolling (*see generally* Pet.; Mem.; Reply), and the Court will not address this exception, *see Jones v. United States*, 304 F.3d 1035, 1040 (11th Cir. 2002) (holding that the petitioner "has the burden of proving entitlement to equitable tolling").

10

juror would have found petitioner guilty beyond a reasonable doubt' in light of the new evidence." *Rozzelle v. Sec'y, Fla. Dep't of Corr.*, 672 F.3d 1000, 1011 (11th Cir. 2012) (first quoting *Arthur v. Allen*, 452 F.3d 1234, 1245 (11th Cir. 2006); and then quoting *Johnson v. Fla., Dep't of Corr.*, 513 F.3d 1328, 1334 (11th Cir. 2008) (alteration added)).

Unlike section 2244(d)(1)(D), the actual innocence exception does not require a habeas petitioner to show "due diligence"; rather, the petitioner must demonstrate there is new evidence strong enough to establish the petitioner's innocence. *See McQuiggin*, 569 U.S. at 395. This places a high bar on the petitioner, who must provide new evidence that raises "sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial." *Arthur*, 452 F.3d at 1245 (alteration in original) (quoting *Schlup v. Delo*, 513 U.S. 298, 317 (1995)). The new evidence must also establish that the petitioner is "factually innocent rather than legally innocent." *San Martin*, 633 F.3d at 1268 (citations omitted).

As stated, Petitioner insists Shedline's affidavit proves his innocence because it both establishes an alibi and shows that Alexandre wanted to frame Petitioner. (*See* Mem. 5). According to Petitioner, Shedline's alibi defense would be extremely persuasive to a jury, because there were no eyewitnesses to the sexual battery and the victim could not identify Petitioner as the perpetrator. (*See id.* 5–6).

The record plainly refutes these arguments. The victim identified Petitioner as the man who touched her vagina with "a hundred percent" certainty when law enforcement presented her with a photo array. (Trial Tr. Vol. 3 254:5–255:5). The victim also identified Petitioner in court as the same person. (*See id.* 247:24–248:8). Moreover, another witness testified that Petitioner was present at the time and place where the sexual battery occurred. (*See* Trial Tr. Vol. 4 364:14–365:6, 374:18–375:15). To credit Shedline's testimony that Petitioner was at her home at roughly

the same time the sexual battery occurred, the jury would have needed to weigh Shedline's credibility against the credibility of the victim and the other witness. Thus, the affidavit does not conclusively prove Petitioner's innocence.

Further, Petitioner's alibi is tenuous at best. The evidence indicates the sexual battery occurred sometime after 8:00 p.m. (*see* Trial Tr. Vol. 5 456:5–57:9), and Shedline admits she was not with Petitioner for approximately thirty-minutes between 9:00 p.m. and 10:00 p.m. and again sometime between 11:00 p.m and 12:00 a.m. (*see* Mem. 43). These concessions eviscerate the alibi's usefulness since Petitioner could have committed the crime during the unaccounted time. *See Baker v. Dixon*, No. 21-cv-60876, 2022 WL 3867784, at *17 (S.D. Fla. Aug. 30, 2022) ("An alibi defense is toothless unless it can pinpoint the defendant's location at the specific time an incriminating event occurred." (citing *Pasha v. State*, 225 So. 3d 688, 710–11 (Fla. 2017))); *DeJesus v. Sec'y, Fla. Dep't of Corr.*, No. 20-80190-Civ, 2022 WL 1262093, at *17 (S.D. Fla. Apr. 28, 2022) (rejecting usefulness of an alibi witness where she "admitted that there were about fifteen minutes — at or around the time of the [crime] itself — when [the petitioner] was not with her" (alterations added; emphasis omitted) (citing *Lott v. Att'y Gen., Fla.*, 594 F.3d 1296, 1302 (11th Cir. 2010))).

Moreover, Shedline's affidavit is otherwise unreliable for two reasons. First, Shedline is Petitioner's sister. (*See* Mem. 43). Often, the testimony of close family members will not raise doubt about a petitioner's guilt — especially when the rest of the evidence presented at trial contradicts that family member's testimony — since they "can be easily impeached for bias." *Bergmann v. McCaughtry*, 65 F.3d 1372, 1380 (7th Cir. 1995); *accord Slade v. Florida*, No. 23-cv-61710, 2024 WL 728081, at *7 (S.D. Fla. Feb. 22, 2024) ("The State would have called the credibility of Petitioner's mother into doubt given her close relationship to her son." (citation

12

omitted)); *Cardona v. Dixon*, No. 19-cv-81567, 2022 WL 2158715, at *12 (S.D. Fla. June 14, 2022) (same, but for the defendant's brother).

Second, Shedline's testimony about Alexandre "setting up" Petitioner is undermined by the record. As one of the prosecutors explained, the State considered calling Alexandre as a witness, but he refused to testify against his cousin at trial and claimed he would intentionally perjure himself if forced to do so. (*See* Trial Tr. Vol. 4 352:21–353:3). These actions are woefully inconsistent with the assertion that Alexandre was eager to send Petitioner to prison on false charges. In sum, Petitioner fails to persuade the Shedline affidavit is "new reliable evidence[.]" *Rozzelle*, 672 F.3d at 1011 (quotation marks and citation omitted).

At bottom, Petitioner is unable to show "it is more likely than not" that a jury would have acquitted him — over the State's evidence — if it had heard from Shedline. *See Rozzelle*, 672 F.3d at 1011 (quotation marks and citation omitted); *see also Mize v. Hall*, 532 F.3d 1184, 1197 (11th Cir. 2008) (explaining that affidavits executed post-trial are inherently weak evidence since "the affiants' statements are obtained without the benefit of cross-examination and an opportunity to make credibility determinations" (quoting *Herrera v. Collins*, 506 U.S. 390, 417 (1993))). For the foregoing reasons, the Court finds that Petitioner has not demonstrated that he is actually innocent and, therefore, his Petition must be dismissed as untimely.

### B. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for an evidentiary hearing. *See Chavez v. Sec'y, Fla. Dep't of Corrs.*, 647 F.3d 1057, 1060 (11th Cir. 2011). "[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) (alteration added). Here, the pertinent facts of the case are fully developed,

and they establish that habeas relief is precluded. Because the Court can "adequately assess [Petitioner's] claim[s] without further factual development[,]" Petitioner is not entitled to an evidentiary hearing. *Turner v. Crosby*, 339 F.3d 1247, 1275 (11th Cir. 2003) (alterations added).

### C. Certificate of Appealability

A prisoner seeking to appeal a district court's final order denying his petition for a writ of habeas corpus has no absolute entitlement to appeal and must obtain a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1); *Harbison v. Bell*, 556 U.S. 180, 183 (2009). A certificate of appealability shall issue only if a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, a petitioner must demonstrate that "reasonable jurists" would find the correctness of the district court's rulings "debatable[.]" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (alteration added). Upon consideration of the record, the Court finds no basis on which to issue a certificate of appealability.

### IV. CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** as follows:

1. The Petition Under 28 U.S.C. [Section] 2254 for a Writ of Habeas Corpus by a Person in State Custody **[ECF No. 1]** is **DISMISSED** as untimely.

2. A *certificate of appealability* is **DENIED**.

3. The Clerk of Court is directed to **CLOSE** this case. Because there are no issues with arguable merit, an appeal would not be taken in good faith, and thus, Petitioner is not entitled to appeal *in forma pauperis*.

CASE NO. 23-23778-CIV-ALTONAGA

**DONE AND ORDERED** in Miami, Florida, this 24th day of April, 2024.

_____
**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc:   counsel of record;
      Petitioner, *pro se*